UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ x
STEVE IDEYI,

                Plaintiff,

                - against -

STATE UNIVERSITY OF NEW YORK
DOWNSTATE MEDICAL CENTER, NEW YORK
CITY HEALTH & HOSPITAL CORPORATION,
and SALVATORE SCLAFANI, Individually and
in his Official Capacity,

                Defendants.
------------------------------------------------------------ x

**MEMORANDUM AND ORDER**

09-CV-1490 (ENV)(RML)

**VITALIANO, D.J.**

Plaintiff Steve Ideyi brings this employment rights action against defendants New York City Health & Hospital Corporation ("HHC") and Dr. Salvatore Sclafani, an employee of the State University of New York Downstate Medical Center ("SUNY Downstate"), alleging unlawful discrimination and retaliation on the basis of his race and national origin.[1] Sclafani now moves to dismiss the amended complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).[2] For the reasons set forth below, the motion is granted in part, with leave to replead those claims not dismissed with prejudice.

## Background

The following allegations are drawn from the text of the amended complaint (Dkt. # 15) and are considered true for the purposes of the current motion.

---

[1] After the initial brief on the current motion was served, plaintiff voluntarily withdrew his claim against SUNY Downstate (Dkt. #30), leaving Sclafani and HHC as the only remaining defendants.

[2] HHC determined that its own independent "motion to dismiss is not appropriate." (Dkt. # 25.)

1

Ideyi is a middle-aged black man of Nigerian national origin. (Am. Compl. ¶ 9.) While working in interventionist radiology at Harlem Hospital/Columbia University (id. ¶ 10), he was recruited to work as an attending physician and assistant professor by Sclafani, the chairman of radiology at SUNY Downstate, with "oral promises" (id. ¶¶ 8, 11) including bonuses payable based on the number of cases plaintiff performed. (Id. ¶ 63.) Ideyi was hired on May 8, 2006, and in his new position as "an employee of [SUNY Downstate]" (id. ¶ 5), he primarily worked at Kings County Medical Center ("KCHC"), performing radiological procedures while teaching fellows, residents, and medical students. (Id. ¶¶ 12-13.) Plaintiff avers further, upon information and belief, that Sclafani was "also employed by" HHC, since he worked at KCHC.[3] (Id. ¶ 8.)

Ideyi contends that throughout his tenure he was disparaged and treated unfairly by Sclafani. For example, Ideyi says that he was assigned a "significantly higher work load compared with other interventionists" in the radiology department, but a request that he be assigned a fellow for assistance was denied. (Id. ¶¶ 13-14.) Sclafani also would "burst into" plaintiff's procedure room, "inject[ ] himself" into plaintiff's classes, undermine him in front of fellow staff and students (id. ¶¶ 17, 21), and "badger" him in a "condescending manner" at conferences. (Id. ¶ 43.) Sclafani even intervened in Ideyi's procedures, and then blamed him for medical complications arising from such intervention. (Id. ¶¶ 19-20.)

The amended complaint highlights one particular point of contention which involved a revascularization procedure that plaintiff had arranged to teach to Sclafani in early 2007. (Id. ¶¶ 22-23.) The two scheduled to perform a case together, but Sclafani was 45 minutes late to the procedure. (Id. ¶ 24.) As the patient was already prepped, plaintiff began on his own, but when Sclafani showed up, he yelled "at everyone in the room and told everyone to shut up." (Id. ¶

---

[3] HHC is a "public benefit corporation" created by New York law to operate the public hospitals and clinics in New York City, including KCHC. N.Y. Unconsol. Law § 7384(1).

2

25.) When plaintiff scheduled additional procedures, Sclafani either failed to attend or excused himself after only a few minutes – behavior which plaintiff credits to "discriminatory animus" because Sclafani was willing to learn a "cerebral angiogram" procedure from other "Caucasian-American and Asian-American radiologists." (Id. ¶¶ 27-31.) Subsequently, Sclafani "made it difficult" for Ideyi to perform this particular procedure by, for example, requiring him to obtain prior clearance from another surgeon. (Id. ¶¶ 32-33.)

In July 2007, at a meeting with Sclafani and the administrator of radiology, Ideyi was told that "there were complaints made about him for his tardiness and other spurious allegations that can only be described as pretext to disguise Defendants' true discriminatory motives." (Id. ¶ 36.) Although Ideyi explained to them that the hospital data bore out that he was a highly competent doctor being "treated unfairly," Sclafani arranged for three additional meetings to discuss plaintiff's work performance. (Id. ¶ 37.) Plaintiff does not specify the dates of these meetings, but he alleges that he was subsequently "further[ ] subjected to discrimination and a continued hostile work environment," including that at some point Sclafani purported to explain to him "how things work in this country." (Id. ¶ 38.) Plaintiff was also informed that he "had to resign," but he refused to do so, leading to "more intimidation and humiliation tactics" by Sclafani, and "retaliation" for his "complaining about the unfair treatment and hostile work environment he was forced to endure as well as for refusing to resign." (Id. ¶¶ 39-40.)

On September 19, 2007, Sclafani publicly announced that Ideyi was barred from doing gastronomy procedures as a result of one incident of "gastronomy dislodgement." (Id. ¶ 44.) Plaintiff claims that this prohibition was "unwarranted" in light of the difficulty of that particular case and his otherwise strong record. (Id. ¶¶ 44, 48.) Further, "none of the other Caucasian-American doctors . . . had any of their clinical privileges limited and/or suspended, leading to an

3

inference that Defendants were discriminating against Plaintiff based upon his race and national origin." (Id. ¶ 47.) Additionally, Ideyi contends that Sclafani "negatively skewed" plaintiff's morbidity and mortality reports, "adversely affecting plaintiff's employment and reputation." (Id. ¶ 50.)

On October 30, 2007, Sclafani informed plaintiff that he was to be terminated, effective July 1, 2008. (Id. ¶ 51.) Plaintiff thereafter chose to resign due to the "extraordinary duress" from Sclafani. (Id. ¶ 52.) After sending letters to Human Resources, his union representatives, and the president of SUNY Downstate addressing his "concerns with the radiology department" (id. ¶¶ 54-55), Ideyi contends that he was "subjected to further discrimination, retaliation, and a hostile work environment." (Id. ¶ 56.) For example, Sclafani "unreasonably pressured" him into taking on a workload "inimical to his health" following hospitalization for a herniated disc (id. ¶ 57) and "attempted to deny" him "conference time." (Id. ¶ 58.)

Following Ideyi's separation from service, he avers that his effective replacement was an "American-born citizen" doing a fellowship. (Id. ¶ 60.) Ideyi subsequently filed a charge of discrimination with the Equal Employment Opportunity Commission, and received a notice of his right to sue from that office on January 7, 2009. (Id. ¶ 4.)

## Discussion

The amended complaint advances claims against Sclafani in both his official and individual capacities for unlawful employment discrimination, retaliation and hostile work environment, pursuant to 42 U.S.C. § 1981 and the New York State Human Rights Law, N.Y. Exec. Law § 296 et seq. ("NYSHRL"). A Monell claim for municipal liability against HHC, pursuant to 42 U.S.C. § 1983, alleging that it was "deliberately indifferent" to "violations of plaintiff's constitutional rights" to equal protection, is also pled. (Am. Compl. ¶¶ 68-69.)

4

I.  **Legal Standard**

Federal Rule of Civil Procedure 8(a)(2) requires a "short and plain statement of the claim showing that the pleader is entitled to relief." This rule does not compel a litigant to supply "detailed factual allegations" in support of his claims, Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964 (2007), "but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). "A pleading that offers 'labels and conclusions' . . . will not do." Id. (quoting Twombly, 550 U.S. at 555); see also In re NYSE Specialists Sec. Litig., 503 F.3d 89, 95 (2d Cir. 2007). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Iqbal, 129 S. Ct. at 1949 (quoting Twombly, 550 U.S. at 557).

To survive a Rule 12(b) motion, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 129 S. Ct. at 1949 (quoting Twombly, 550 U.S. at 570). This "plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (internal quotations omitted); see Iqbal v. Hasty, 490 F.3d 143, 157-58 (2d Cir. 2007) (interpreting Twombly to require a "plausibility standard" that "obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible") (emphasis omitted), rev'd on other grounds, 129 S. Ct. 1937 (2009). At the same time, on a Rule 12(b)(6) motion, the Court must accept as true all factual statements alleged in the complaint and draw all reasonable inferences in favor of the nonmoving party. Vietnam Ass'n for Victims of Agent Orange v. Dow Chem. Co., 517 F.3d 104, 115 (2d Cir. 2008).

## II. Claims Against Sclafani

### A. Sovereign Immunity and the Official Capacity Claims

Sclafani argues that the claims brought against him in his official capacity as an employee of SUNY Downstate must be dismissed for lack of subject matter jurisdiction due to the doctrine of sovereign immunity and the protection from suit it provides to state employees.

The Eleventh Amendment, it is true, bars a private suit against a state in federal court unless the state consents to being sued or Congress "unequivocally express[es]" its intent to abrogate the state's sovereign immunity through legislation "enacted 'pursuant to a valid grant of constitutional authority.'" In re Deposit Ins. Agency, 482 F.3d 612, 617 (2d Cir. 2007) (quoting Tennessee v. Lane, 541 US. 509, 517 (2004)); see also Carvel v. Cuomo, 357 Fed. Appx. 382, 383 (2d Cir. 2009) (explaining that the Eleventh Amendment also applies to federal lawsuits "on the basis of state law"). Further, as Sclafani professes, Eleventh Amendment immunity extends beyond the state itself to "state agents and state instrumentalities that are, effectively, arms of the state," Gorton v. Gettel, 554 F.3d 60, 62 (2d Cir. 2009) (quoting Woods v. Rondout Valley Cent. Sch. Dist. Bd. of Educ., 466 F.3d 232, 236 (2d Cir. 2006)), covering as well officials at state agencies working on behalf of the state (i.e., in their official capacities). See Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 101-02, 104 S. Ct. 900, 908-09 (1984); Ford v. Reynolds, 316 F.3d 351, 354 (2d Cir. 2003) ("[W]hen the action is in essence one for the recovery of money from the state, the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity from suit even though individual officials are nominal defendants.") (quoting Regents of the Univ. of Cal. v. Doe, 519 U.S. 425, 429, 117 S. Ct. 900, 903-04 (1997)); Zhao v. State Univ. of N.Y., 472 F. Supp. 2d 289, 320 (E.D.N.Y. 2007).

Here, the sovereign immunity analysis is complicated by the fact that plaintiff appears to contend that Sclafani is employed by both HHC and SUNY Downstate. Assuming *arguendo* that Sclafani was dually employed by the state and HHC, the claims for damages against him in his official capacity at SUNY Downstate cannot survive because SUNY (including its subdivisions) and its officials are entitled to the protection of sovereign immunity. See Dube v. State Univ. of N.Y., 900 F.2d 587, 594 (2d Cir. 1990) (holding that "SUNY is an integral part of the government for the State [of New York] and when it is sued the State is the real party") (internal quotation marks omitted); Garcia v. State Univ. of N.Y. Health Scis. Ctr., 280 F.3d 98, 107 (2d Cir. 2001) ("Insofar as [plaintiff] is suing the individual defendants [who are SUNY administrators and professors] in their official capacities, he is seeking damages from New York, and the Eleventh Amendment therefore shields them to the same extent that it shields SUNY."); Walters v. Suffolk Cnty., 09-CV-556, 2009 U.S. Dist. LEXIS 47166, at *8 (E.D.N.Y. June 4, 2009) (sovereign immunity barred § 1983 claim against "individual SUNY Stony Brook Medical Center personnel . . . inasmuch as they are being sued in their official capacities for money damages"). It is crystal clear, importantly, that New York has not consented to lawsuits in federal court against SUNY under either § 1981 or NYSHRL. See Moore v. N.Y. State Div. of Parole, 06-CV-1973, 2008 U.S. Dist. LEXIS 72260, at *20-*21 (E.D.N.Y. Sept. 23, 2008); Richman v. Pediatric Serv. Group, LLP, 222 F. Supp. 2d 207, 209 (N.D.N.Y. 2002) (barring NYSHRL claims against SUNY Upstate Medical University on Eleventh Amendment grounds). Further, "Congress has not abrogated the states' sovereign immunity under 42 U.S.C. § 1981." Moshenko v. State Univ. of N.Y. at Buffalo, 07-CV-116, 2009 U.S. Dist. LEXIS 125069, at *9 (W.D.N.Y. Sept. 16, 2009); see Ding v. Bendo, 03-CV-1237, 2006 U.S. Dist. LEXIS 24339, at *10-*11 (E.D.N.Y. Mar. 23, 2006). Accordingly, any claim for damages against Sclafani in his

official capacity as a SUNY Downstate employee is dismissed with prejudice for lack of subject matter jurisdiction.

Plaintiff may, however, still have the remnant of a claim against Sclafani in his official capacity at SUNY Downstate to the extent that it fits into a shallow lacuna freed of state sovereign immunity that was first enunciated in Ex Parte Young, 209 U.S. 123, 28 S. Ct. 441 (1908): "the Eleventh Amendment does not prevent federal courts from granting prospective injunctive relief" against state officials "to prevent a continuing violation of federal law" because such conduct is not considered to be state action. Green v. Mansour, 474 U.S. 64, 68, 106 S. Ct. 423, 426 (1985); see Pennhurst, 465 U.S. at 102, 104 S. Ct. at 909. On this score, the amended complaint purportedly seeks not only damages but also a permanent injunction "enjoining defendants from any further actions abridging the plaintiff's rights." Yet it is not clear what ongoing violations could be corrected; plaintiff no longer works for any defendant and he has not sought reinstatement. On the face of the pleading, therefore, the Young exception is not supportable, and any official capacity claim based on prospective injunctive relief is dismissed, but with leave to replead on the remote chance that Ideyi can do so consistent with his obligations under Rules 8 and 11 of the Federal Rules of Civil Procedure.[4]

Any arguable official capacity claim against Sclafani as an employee of HHC simmers in a different kettle of fish. New York has waived a degree of sovereign immunity and explicitly provided that HHC was created with the power "[t]o sue and be sued." N.Y. Unconsol. Law § 7385(1); see Nogbuo v. Mayrose, 07-CV-3763, 2009 U.S. Dist. LEXIS 96118, at *19 (S.D.N.Y.

---

[4] The Young doctrine only applies to plaintiff's potential federal claim, and would not permit an official capacity claim against Sclafani as an employee of SUNY Downstate on the NYSHRL claim, see Monserrate v. N.Y. State Senate, 695 F. Supp. 2d 80, 97(S.D.N.Y. 2010), aff'd, 599 F.3d 148 (2d Cir. 2010). Further, as discussed infra Part II.B, any potential Young claim must be brought pursuant to 42 U.S.C. § 1983, not § 1981.

Oct. 15, 2009); Bogart v. N.Y. City Health & Hosps. Corp., 98-CV-6118, 2001 U.S. Dist. LEXIS 6065, at *19 (S.D.N.Y. May 11, 2001). Yet, to the extent that Sclafani is being sued for employment discrimination in his official capacity as an HHC supervisory employee, the claim is inadequately pled, because Ideyi alleges himself only to be an employee of SUNY Downstate. (Am. Compl. ¶ 5.) Moreover, especially given that any act or omission by Sclafani in his official capacity as an employee of SUNY Downstate is immunized by the Eleventh Amendment (and also cannot be relied upon to support a Monell claim against HHC), it is critical that the allegations are not jumbled. Indeed, de-scrambling the allegation is also essential to enable defendants to assert any and all appropriate defenses to claims asserted against them. Thus, in its current incarnation, even assuming Ideyi could plead in good faith that he too was an employee of HHC, the amended complaint does not make clear which acts or omissions charged against Sclafani occurred in which official capacity. Any purported claim against Sclafani in his official capacity at HHC is therefore dismissed without prejudice.

B.  Federal Individual Capacity Claims

Plaintiff also interposes claims for discrimination and hostile work environment against Sclafani in his individual capacity pursuant to 42 U.S.C. § 1981, which provides that "[a]ll persons . . . shall have the same right . . . to make and enforce contracts . . . and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens."[5] Plaintiff alleges specifically that Sclafani mistreated him "in his compensation, terms, conditions, and/or privileges of employment, and denied him the same

---

[5]  It is unclear whether plaintiff intends to bring a claim for retaliation pursuant to § 1981 as well. Whereas plaintiff specifically notes discrimination based in part on "opposition to discriminatory practices" with respect to the NYSHRL claim against Sclafani, this language is missing from the § 1981 claim. In any event, for the reasons discussed infra, the Court dismisses any retaliation claim brought pursuant to § 1981.

9

rights to contract because of his race, in that plaintiff was subjected to adverse employment actions, a hostile work environment, and an ongoing atmosphere of adverse acts . . . ." (Am. Compl. ¶ 67.)

However, as defendant correctly points out, the "express cause of action for damages created by § 1983 constitutes the *exclusive* federal remedy for violation of the rights guaranteed in § 1981 by state governmental units." Patterson v. Cnty. of Oneida, 375 F.3d 206, 225 (2d Cir. 2004) (quoting Jett v. Dallas Indep. Sch. Dist., 491 U.S. 701, 733, 109 S. Ct. 2702, 2722 (1989)); see Gladwin v. Pozzi, 06-CV-650, 2010 U.S. Dist. LEXIS 5091, at *17-*18 (S.D.N.Y. Jan. 22, 2010); Brown v. Baldwin Union Free Sch. Dist., 603 F. Supp. 2d 509, 517 n.5 (E.D.N.Y. 2009). Further, "[c]ourts have interpreted this prohibition to extend to actions against individual defendants in their individual capacities." Rehman v. State Univ. of N.Y., 596 F. Supp. 2d 643, 654 (E.D.N.Y. 2009) (barring § 1981 claims against employees of SUNY Stony Brook Medical School). The Court therefore dismisses plaintiff's § 1981 claims against Sclafani in his individual capacity for lack of subject matter jurisdiction, with leave to replead as § 1983 claims.

C. NYSHRL Claims

Plaintiff alleges that Sclafani subjected him to unlawful discrimination, retaliation, and a hostile work environment in violation of NYSHRL. Defendant only opposes the retaliation claim, arguing that it fails to satisfy the pleading requirements of Iqbal.[6] The Court focuses on that lone aspect of the claim.

---

[6] In the reply brief, defendant argues that since plaintiff dismissed his Title VII claims against SUNY Downstate and the Court lacks subject matter jurisdiction over the § 1981 claims, the Court lacks "original jurisdiction" to hear the NYSHRL claim pursuant to 28 U.S.C. § 1367(c)(3). (Reply Br. at 1 n.1.) The determination of supplemental jurisdiction pursuant to § 1367(c)(3) is discretionary. See Benjamin v. N.Y. City Dep't of Health, 144 Fed. Appx. 140, 142 (2d Cir. 2005); Shue v. United States, 10-CV-2501, 2010 U.S. Dist. LEXIS 93440, at *11 (E.D.N.Y. Sept. 3, 2010). The issue, however, is not now ripe for decision. As the Court grants plaintiff leave to replead some of the

NYSHRL provides for individual liability of an employee for unlawful retaliation, providing that "[i]t shall be an unlawful discriminatory practice for any person . . . to retaliate or discriminate against any person because he or she has opposed any practices forbidden under this article . . . ." N.Y. Exec. Law § 296(7). "[R]etaliation claims under the NYSHRL are generally governed by the same standards as federal claims under Title VII." Schiano v. Quality Payroll Sys., 445 F.3d 597, 609 (2d Cir. 2006); see McDowell v. T-Mobile USA, Inc., 307 Fed. Appx. 531, 532 n.1 (2d Cir. 2009) (explaining that claims brought under New York State human rights laws "are analytically identical to claims brought under Title VII"). That is, plaintiff can plead a *prima facie* claim for retaliation against Sclafani by plausibly alleging that: (1) he was engaged in a protected activity; (2) Sclafani knew that he was engaged in such activity; (3) Sclafani took an adverse action against him; and (4) there was a causal connection between the adverse action and the protected activity. Schiano, 445 F.3d at 608; see Cifra v. Gen. Elec. Co., 252 F.3d 205, 216 (2d Cir. 2001) (explaining that a "retaliatory motive" must have "played a part in the adverse employment action"); Pugni v. Reader's Digest Ass'n, 05-CV-8026, 2007 U.S. Dist. LEXIS 26284, at *65 n.6 (noting that the same standards apply to NYSHRL claims); Forrest v. Jewish Guild for the Blind, 3 N.Y.3d 295, 312-13, 786 N.Y.S.2d 382, 396, 819 N.E.2d 998, 1012 (2004).

Ideyi's retaliation claim, however, fails to withstand Iqbal scrutiny because he has not sufficiently alleged that he engaged in any "protected activity," namely an "action taken to protest or oppose statutorily prohibited discrimination." Bryant v. Verizon Communs., Inc., 550 F. Supp. 2d 513, 537 (S.D.N.Y. 2008) (citing Cruz v. Coach Stores, 202 F.3d 560, 566 (2d Cir. 2000)); see Hubbard v. Total Communs., Inc., 347 Fed. Appx. 679, 680-81 (2d Cir. 2009)

---

federal claims, the Court defers ruling on any issue of supplemental jurisdiction until after the filing of a second amended complaint and subsequent motion practice.

(noting that the term "includes opposition to a discriminatory employment practice"). Although the term includes "filing of formal charges of discrimination as well as .... informal protests of discrimination," Matima v. Celli, 228 F.3d 68, 78 (2d Cir. 2000), at no point in the amended complaint does plaintiff allege that he ever complained to anyone of any discriminatory practices based on his race or national origin. Plaintiff references a complaint in a July 2007 meeting with Sclafani and the administrator of radiology that he was being "treated unfairly," but that does not mean that he complained about a discriminatory animus. See Aspilaire v. Wyeth Pharms., Inc., 612 F. Supp. 2d 289, 308-09 (S.D.N.Y. 2009) (noting that "mere complaints of unfair treatment by an individual are not protected speech" and that "[t]he onus is on the speaker to clarify to the employer that he is complaining of unfair treatment due to his membership in a protected class, and that he is not complaining merely of unfair treatment generally"). Similarly, plaintiff vaguely alleges that he had complained about "hostile work environment," but rather than tie that allegation to any racial or other discrimination, he asserts that it resulted from his refusal to resign. (Am. Compl. ¶ 40.) Indeed, plaintiff effectively concedes that the amended complaint does not allege that he raised the issue of class-based discrimination to his superiors insofar as he argues that the Court should *imply* such allegations: "The entire complaint is predicated on the underlying notion that [plaintiff] was subject to a hostile work environment ... [so] when he complained of his 'unfair treatment' to his superiors, he was clearly complaining of defendants' discrimination." (Opp. Br. at 7.) Accordingly, plaintiff's NYSHRL claim for retaliation against Sclafani is dismissed without prejudice.[7]

---

[7] Although the Court does not rule on the plausibility of plaintiff's claims for discrimination and hostile work environment, it notes that the opportunity afforded plaintiff to replead permits the repleading of these other claims to ensure their compliance with Iqbal.

12

### III. Claim Against HHC

Although HHC opted to not bring its own motion to dismiss, "[a] district court's ability *sua sponte* to dismiss a complaint that lacks a basis in law or fact is well-established." Muka v. Murphy, 358 Fed. Appx. 239, 241 (2d Cir. 2009); see Dickerson v. Mut. Of Am., 09-CV-822, 2010 U.S. Dist. LEXIS 25499, at *28 (S.D.N.Y. Mar. 9, 2010); Citadel Mgmt., Inc. v. Telesis Trust, Inc., 123 F. Supp. 2d 133, 146 (S.D.N.Y. 2000) ("[T]he Court has discretion to dismiss claims *sua sponte* pursuant to Rule 12(b)(6), particularly where it is clear that a plaintiff could not have prevailed on the facts as alleged in the complaint.") Here, plaintiff alleges that HHC "intentionally committed, condoned or were deliberately indifferent" to violations of his constitutional right to equal protection, and he brings a Monell claim alleging that HHC had a "custom or practice of discriminating against plaintiff based on his race and national origin," that there was "inadequate training/supervision" and a failure by "supervisors" to "properly investigate and address allegations of discrimination." (Am. Compl. ¶¶ 68-69.)

As noted above, plaintiff has failed to allege that he was an employee of HHC, thus dooming a claim that HHC should be in any way liable for the alleged employment discrimination to which plaintiff was subjected. Yet, even if otherwise cured, the § 1983 claim also suffers from a more fundamental defect. Following Monell v. Dep't of Social Servs., 436 U.S. 658, 98 S. Ct. 2018 (1978), and its progeny, a municipality or municipal supervisory official cannot be held liable under § 1983 simply on a theory of *respondeat superior*. See Pembaur v. City of Cincinnati, 475 U.S. 469, 478, 106 S. Ct. 1292, 1297 (1986); Samuels v. Selsky, 166 Fed. Appx. 552, 556 (2d Cir. 2006). Rather, there must be a "direct causal link between a municipal policy or custom and the alleged constitutional deprivation," City of Canton v. Harris, 489 U.S. 378, 385, 109 S. Ct. 1197, 1203 (1989), which can be demonstrated by showing: "(1) a

formal policy, promulgated or adopted by the City [or one of its arms]; (2) that an official with policymaking authority took action or made a specific decision which caused the alleged violation of constitutional rights; or (3) the existence of an unlawful practice by subordinate officials was so permanent or well settled so as to constitute a 'custom or usage' and that the practice was so widespread as to imply the constructive acquiescence of policymaking officials." Bradley v. City of New York, 08-CV-1106, 2009 U.S. Dist. LEXIS 51532, at *7 (E.D.N.Y. June 18, 2009) (internal citations omitted).

In the amended complaint, plaintiff provides nothing more than a brief, rote recitation of the general ways in which a municipal entity may be held liable under a Monell theory. Plaintiff fails to provide even the slightest factual support for his conclusory allegations that HHC has inadequate training and supervision or a policy of discrimination. Further, the fact that the alleged "custom or practice" of discrimination targets only plaintiff reveals that the claim is nothing more than a dressed-up action for *respondeat superior*. In short, the Court has no reason to believe that plaintiff has any basis for a legitimate Monell claim aside from his own speculation. As such, the Court dismisses the claim against HHC with leave to replead, if he can do so in good faith.

## Conclusion

For the reasons discussed above, the motion to dismiss is granted in part. Plaintiff's claims for discrimination and hostile work environment against Sclafani in his individual capacity pursuant to NYSHRL survive the motion to dismiss. The balance of the claims are dismissed with prejudice, except the following causes of action are dismissed without prejudice with leave to replead, provided that plaintiff can do so in compliance with his Rule 8 and Rule 11 obligations: (1) § 1983 claims for prospective injunctive relief against Sclafani in his official

14

capacity; (2) § 1983 claims for damages against Sclafani in his individual capacity and in his official capacity as an employee of HHC; (3) NYSHRL claims for retaliation against Sclafani in his individual capacity; and (4) Monell claims against HHC.

Plaintiff shall file any amended complaint no later than 20 days from the date this Memorandum and Order is docketed.

SO ORDERED.

Dated: Brooklyn, New York
      September 30, 2010

                                        ERIC N. VITALIANO
                                        United States District Judge